The next case call for oral argument is Nye v. Leavell, okay. I figured I wouldn't miss it. Counsel. Thank you, Your Honor. May it please the court, my name is Thomas Magg and I represent the defendants Ivo Levine Liddell and Stan Lee. This is the second time this matter has been before this appellate court. The first time was the reversal of the summary judgment motion. Following the reversal of the summary judgment motion, there were some amended pleadings and ultimately the case went to trial. We're here appealing matters as a result of the trial. The first matter is kind of a fundamental matter, and that is whether or not a trial court can refuse a party's request to make an offer of approval. The trial record in this case is replete with the trial court refusing to allow offers of proof. When it first happened, I did not have the citations which indicated that the trial court had no discretion but to allow the offers of proof. But ultimately, during the course of the trial, I raised the issue with the court and advised the trial court of the authority which says that the trial court has no discretion but to allow an offer of proof. It might be able to regulate the manner in which it is made, but ultimately a party has an absolute right to make an offer of proof. For without an offer of proof, this court, the Illinois Supreme Court, or the U.S. Supreme Court, would have no idea what the offer of proof might have been. The trial court, for a while, then allowed offers of proof to be made, but then ultimately went back to refusing. That is fundamental black-letter law error, and by itself, if nothing else, mandates reversal of this case. Who were you going to provide the proof from? Nye? Various witnesses that were called on the stand. The record is complete. Not every witness, but many witnesses were testifying, and an objection was made that I personally don't think was appropriate. And in some of those cases, an offer of proof was sought, and in many of those cases, the offer of proof was rejected. I believe Nye was at least one. Yes. Was he called in the trial? Was he called as a witness in the trial? Yes, he was. The second fundamental issue that is raised in this appeal is a matter that I'm not sure has ever been directly addressed by this court or any other appellate level court in the state of Illinois directly, and that is whether or not an amended pleading allows a jury demand to be filed when it was not filed in the original jury, when the complaint was originally answered. This court's decision in Hoveroski, which is a forum-not-convenience appeal, I think is illustrative of what the argument is. In Hoveroski, an answer was filed and a 98-time period to file a forum-not-convenience motion came and went. And at some time down the road, Plaintiff in Hoveroski v. Home Depot filed an amended complaint. Home Depot, the defendant in that case, filed a forum-not-convenience motion, which would have been grossly untimely if the 98-time period under Rule 187 was factored off of the original answer. But this court ultimately found that it was a timely forum-not-convenience motion because the time period ran from the answer to the amended complaint. Here, 735 ILCS 5-2-1105 says that a jury demand shall be made at the time of filing an answer. The record is absolutely clear that the original answer was filed by my predecessor in the case. No jury was demanded, and I'm not going to pretend to tell this court that it wasn't. However, before trial and after the first appeal in this case, an amended complaint was filed, and a jury demand was filed along with that answer. The jury fee was docketed, and there was a request made both in writing and orally from trial court for a jury. However, the trial court rejected the jury demand, finding it was untimely because it was not originally demanded at the time the original answer was filed. And incidentally, also believed that because this is a chancery case, I take an action in equity in the court's opinion, that a jury would not be appropriate. I would argue that Hojarowski is at least persuasive authority for interpreting the jury statute to say that a jury demand can be demanded whenever an answer is filed to an amended complaint. A Supreme Court rule is interpreted the same as a statute, so I think that that is an appropriate interpretation of the jury demand statute. As relates to the issue of an action in equity, i.e. a chancery case, I concede that historically actions in chancery are non-jury cases. However, in this case, it's a contract case. Contract cases, with very few exceptions, are actions at law. Actions at law, historically under the common law, are jury questions. Therefore, the trial court erred in denying my clients their right to a jury trial. There are other plaintiffs of error, but the final one that I'll rest on in my oral argument here today goes to the application of the correct standard applied by the trial court. The trial court found in this lease for alleged non-production of oil on the lease that the appropriate standard was, quote, reasonable diligence, close quote, as to whether or not my clients had used the appropriate standard of diligence to operate their oil wells. My clients raised as a defense to the alleged non-operation of the well that in 2001 the state of Illinois ordered them to stop production. And in paragraph 9 of the lease, which is cited in the brief, in sum, paraphrase, if the state of Illinois or some other governmental entity shuts down my clients, the time period is not held against my clients as the owners of the lease. Since 2001, my clients have been prohibited by the state of Illinois from operating this lease. As to whether there's any collateral effect because one of my clients litigated with the state of Illinois, I would note that Stanley LaBelle is not alleged to have been a part of those cases, and in fact he was not. The Gillespie case is where the, from the Illinois Supreme Court, is where the reasonable diligence standard comes from. However, that case was not interpreting a lease. That case was applying the general law in the absence of an express lease provision. In this case, we have an express lease provision. The parties contracted at some point in the past to take into account possible future occurrences, one of which is compliance with the lease provided by the state, federal, and municipal law ordinance, executive order, rule, or regulation. That's what happened in this case because that's what happened in this case. Does it make any difference that the state's basis for this order was a finding of abandonment? As to Stanley LaBelle, I think it makes no difference whatsoever because Stanley LaBelle has never been a part of that litigation. Thus, there can be no collateral or conclusive effect by an administrative proceeding. Stanley LaBelle, one of the defendants in this case, was not a part of it. I would note, as to Eva LaBelle, if there was a finding on the merits of that, it might make a difference to that. But as I noted in my brief, I don't think there's ever been a finding on the merits of abandonment outside of the administrative hearing. There's been a finding, by my interpretation of this court's ultimate order on both cases, that one of the cases was moot because of the second case, and the second case was originally dismissed due to lack of jurisdiction. A lack of jurisdiction or a mootness finding is not dispositive on the merits. So, in direct answer to your question, I don't believe it does, no. And if the court doesn't have any further questions, I will address you in my own mode. I don't believe we do. Thank you, counsel. Counsel? At this court, my name is Frank J. Weber. I represent the plaintiff, Greg Nye, in this case. I would like to address the specific items raised by counsel just now. The first being the refusal of the trial court to allow an offer of proof on inquiry in the case. I take exception with counsel's statement that the record is replete with denials by the trial court of the allowance of an offer of proof. I went through the entire record. There are two instances that I pointed out in my brief where the trial court did refuse an offer of proof. The first instance was during cross-examination of the plaintiff, Greg Nye. I had called Greg Nye as a witness in the case. He is the owner of the oil, gas, and minerals that were subject of this lease. During direct examination, my inquiry of Mr. Nye was limited to establishing his ownership and his records and observations with regard to production. During cross-examination, opposing counsel indicated to the court that he was going to offer certain evidence in his case, but that he wanted certain facts to be assumed by Mr. Nye, one being that the state had held an administrative hearing and, secondly, that they had not provided notice of that administrative hearing to the defendants in this case. Then he posed the question to Mr. Nye, do you think it would have been reasonable for the Lovells not to attend a hearing of which they had no notice? I objected to that inquiry. First of all, it was way beyond the scope of direct examination. Secondly, it was not relevant to the issue in the case, that is, whether or not there had been a cessation of production under the terms of the lease, which would have caused the lease to have expired. I also objected, as I recall, that it would ask for conclusion and speculation on behalf of Mr. Nye. Again, the question posed said they didn't have notice of the hearing and the state held a hearing, and then the witness was asked, do you think that was reasonable? To me, that was totally irrelevant to the issues at hand. I have cited in my brief authority that an offer of proof need not be allowed where the inquiry or the evidence sought to be produced is not relevant. That was the first instance. The second instance that I found in the record was where a witness of the defendant, a Mr. Robert Mull, who was an employee of the Illinois Department of Natural Resources, he had been subpoenaed in the case and was asked, as I recall, did you confer with attorney Tom Davis before you came here today? And Mr. Mull testified that, yes, Tom Davis was his attorney. And then he asked him, basically, what did you discuss? Mr. Mull, being an employee of the state, was represented in court by an attorney from the attorney general's office. That attorney objected, claiming attorney client privilege. Again, there was nothing of relevance that would have come out from an offer of proof of asking his witness what he and his attorney had talked about concerning the case. Keep in mind, this is a suit to cancel an oil and gas lease for failure of production under the terms of the lease, and what conversations may have occurred in 2009 or 10 some five to eight years after the reeling of facts in the case that occurred would not have been relevant to the case. Those were the only two instances where I have been able to find in the record any refusal of an offer of proof by the trial judge. I believe her rulings in that case in those two instances were appropriate for the reasons that I've stated, that they were not relevant. The second item raised by the defense here is that they should have been allowed to have a jury trial in this case. The record will show that this case was filed in, I believe it was in January of 2005. The defendant shortly thereafter, sometime within the next several months, filed an answer, made no jury demand. The case went through considerable discovery, really came up to this court on a summary judgment grant by the trial court. This court reversed it, sent it back for trial. In a pretrial, we asked the court to amend our complaint by interlineation to remove one prayer that we had asked for. In our original complaint, we had asked that the court order that the defendant be required to plug the oil wells on the lease. In the pretrial, we asked the court to allow us to amend our complaint by interlineation to actually remove that prayer from the complaint. The defendant then, I believe on date of trial, filed an answer. I don't know that the court even asked, I don't believe the record indicates that the court asked that the defendant file an answer to the complaint as amended. But again, the amendment was made by interlineation. The on date of trial and amended answer, answer to the amendment, complaint as amended, excuse me, was filed and a jury demand made. Keep in mind, this is a suit to cancel an oil and gas lease. It's brought under a chancery, as a chancery case in the circuit court. The request for the jury demand was some three years after the complaint was filed. In their request to, oral request, I guess, or in the statement that was made, there was no effort on behalf of the defendant to cause, to show any good cause why they had not made a jury demand earlier. They did not seek to show good cause in any way. Would they have to if there's an amended complaint and they filed a timely answer? I believe if you, I believe that the cases indicate that where you want to make a late jury demand, late being after you have filed your answer, then you must show good cause. Let me rephrase the question, because you've got a complaint, you've got an answer, no jury demand. You've got an amended complaint, to whatever degree it's amended, and a timely answer is filed. In that timely answer, I mean, the issue is whether a jury demand is appropriate and effective in that timely answer to an amended complaint. I don't believe it is. I believe the Code of Civil Procedure requires a jury demand to be made when you file your answer to the original, or your original answer, I would say. So your position is that the jury demand is precluded if it's not filed with the original answer? That's correct. Okay. And as I indicated, there's also a provision in the Code of Civil Procedure about a jury being involved in an equitable proceeding. In that case, the court must first make certain findings that there are issues that are properly presented to a jury. In this case, the defendants didn't seek at any time during the pleading phase or the entire history of the case to ask the court to submit certain issues to a jury under that provision of the Code of Civil Procedure. So it's our position that the defendants were not entitled to a jury based upon the provision of the Code of Civil Procedure and the fact they did not file a timely jury demand. The third issue raised by the defense here is, did the court apply the proper standard in analyzing the facts of this case to determine that the lease should be canceled? And I agree that the standard that is used in these types of cases was established in the Gillespie case by the Illinois Supreme Court. That case did involve a cancellation of an oil and gas lease out of Lawrence County, Illinois. The court there found that the standard to be applied would be, in light of all of the surrounding circumstances, has the operator of the lease used reasonable diligence to continue the lease in effect? And I believe that standard is the one that applies in this case. I would advise the court that I did cite a case that I had the privilege of representing the plaintiff on and did appear before this court several years ago. A case very similar in facts, the case of Dart v. Lavelle. The same defendants were in that case or in this case. I would submit to the court and I would think the court could take judicial notice of the fact that the same identical terminology of the lease in the Dart case is in the lease that is before this court. And in the Dart case, this court did apply the reasonable diligence standard. And in the Dart case, there were allegations by the defendant that they had been interfered with by complaints of the plaintiff to the state of Illinois with regard to the defendant's operations. In our case, the facts, as I reviewed Judge Harrell's decision in preparing for this argument, the facts in our case are very similar to the facts that existed in the Dart case. First of all, the evidence here indicated that even prior to the state of Illinois instituting its administrative proceedings against these defendants for basically not having produced the wells for at least two years, there was an extended period of time that we proved in the trial court that no production activity was had with regard to this lease. The evidence showed that the last sale of oil was in June of 2000. There was no evidence as to whether it had been produced in June or May or prior to that time, but the evidence showed that there was no production for or no oil produced after that time since that was the last sale. The record also shows that there was a considerable period of time in which electricity was disconnected from this lease for nonpayment of charges by the power company. As in the Dart case, the defendants here had no records of their production activities. The defendants, as in the Dart case, had no records of any expenditures being made for operation of the lease. As I said, this court in the Dart case, which has an identical oil and gas lease form, as this one, found that the reasonable diligence standard did apply. And in their brief, and I responded to that, the defendants seemed to claim that they should be excused from production because there were things beyond their control which would excuse production under the terms of the lease. However, the record shows that, first of all, they were in control of activities prior to the time that the state initiated their proceedings in early 2001. The record shows that there was no production activity for many months even prior to the time that the state initiated its enforcement activities against these defendants. The record also shows, however, that the enforcement actions by the state of Illinois seeking an abandonment of the lease for nonproduction work and for payer of well fees were in fact sustained. So the failure of production was definitely not beyond the control of these defendants. One cannot, by their own improper conduct, claim an excuse for something where they have an obligation to perform. The lack of performance was not beyond their control. Is that when the electricity was shut off? That's the issue? That's part of the issue. Part of it is they just didn't do anything. And you don't dispute that Paragraph 9 of the lease would toll the lack of production if something were beyond the control of the producers? Well, it was beyond the control. Right. That was not caused by their fault. And you're saying it was caused by their fault because they didn't pay electrical bills and the electricity was shut off. Right. And even looking at those enforcement proceedings of the state, it was determined by the final order of this court, I believe, that they were at fault in that they had not produced for at least two years prior to the state instituting its first enforcement proceeding and secondly had not paid their state mandated well fees for a period of, I believe it was 1999 through 2001. So in both instances, number one, the failure of the defendants to actually produce oil and number two, the failure of the defendants to comply with the state rules and regulations with regard to operation of an oil and gas lease, both of those were their fault. That conduct or lack of conduct was not beyond their control such that they would be excused from production. That's our position. Thank you very much. Thank you, counsel. Counsel? Thank you. Addressing just a couple of points. I recollect Darby Lavelle case set by counsel rested its holding on the fact that there was no analogous lease provision as we're discussing here today in the dark lease. My recollection further is that had there been such a lease, the court itself in dark notice of the result might have been different, but in the absence of such a provision, they are bound by the last one. In this case, the Nye case, we have paragraph nine in the lease. Therefore, we have a contractual agreement that is something different than the default rule in the absence of such a provision. I would also note that the complaint file in this case refers to production stopping in June of 2000. Even assuming that's true, anything that took place prior to June of 2000 candidly is completely irrelevant because it's not pledged outside the scope of the plea. Whether there was production in 1999, 1998, 1962 or any other time prior to June of 2000 is completely irrelevant. Also, I would note the fact that electricity was discontinued as noted by counsel in the brief three times. 1999, 2000 and 2001 also shows that the electricity got turned back on every time and at least didn't get turned back on until after the state had shut down my clients. There's no point in paying the electric company to feed electricity into a machine that the state has enjoined my clients from operating. Subject to any other questions of the court, I have nothing further. Okay. Thank you, counsel. Thank you. We appreciate the briefs and arguments of both counsel. We'll take the case under advisement.